**LITTLE HORN STATE BANK, A Montana Banking Corporation, Plaintiff,**

v.

**CROW TRIBAL COURT and Dan Old Elk, Sr., Defendants.**

**No. CV–88–155–BLG–JFB.**

United States District Court,
D. Montana,
Billings Division.

July 21, 1988.

Natasha J. Morton, Christine A. Cooke, Hardin, Mont., for plaintiff.

Dan Old Elk, Sr., Crow Agency, Mont., pro se.

## MEMORANDUM AND ORDER

BATTIN, Chief Judge.

On July 18, 1988, a hearing was held before the undersigned to show cause why a preliminary injunction should not be entered in this matter. Appearing for the plaintiff was Christine A. Cooke. Neither defendant appeared before the Court to contest plaintiff's motion. Having reviewed the evidence presented by the plaintiff during such hearing, the Court concludes that plaintiff's due process rights were violated and that plaintiff will suffer irreparable harm if an injunction is not granted. The Court further finds that the facts surrounding this case have been fully developed and that there exists a cognizable danger that plaintiff's rights will be violated again. Therefore, the Court issues a permanent injunction restraining, enjoining and prohibiting the defendants from enforcing the Crow Tribal Court Order dated June 30, 1988.

## PROCEDURAL FACTS

The facts of this case strongly support a gross violation of plaintiff's due process rights. On November 21, 1985, plaintiff Little Horn State Bank filed a complaint in the Thirteenth Judicial District Court of the State of Montana, in and for the County of Big Horn. The complaint alleged that Daniel C. Old Elk, Sr. and Old Elk Building Supply had defaulted on a promissory note executed to plaintiff and secured by a purchase money security interest in a forklift.

After the foreclosure proceedings were initiated by plaintiff, defendants were duly served with a summons and complaint. No appearance was ever made by the defendants and a default was entered. On July 20, 1986, District Court Judge Charles Luedke issued Findings of Fact, Conclusions of Law and Decree of Foreclosure, together with an Order of Sale.

Subsequent to obtaining this judgment, plaintiff filed a complaint for Enforcement of Foreign Judgment in the Crow Tribal Court on April 11, 1987. Again, defendants Daniel Old Elk, Sr. and Old Elk Building Supply were duly served with copies of the complaint and summons which was issued by the Crow Tribal Court. The defendants failed to make any appearance in this proceeding and a default was entered by the Crow Tribal Court on May 12, 1986. On May 20, 1986, the Clerk of the Crow Tribal Court set a hearing on default judgment May 27, 1986. At said hearing plaintiff Little Horn State Bank appeared and presented evidence to the Crow Tribal Court. Once again, defendants failed to appear before the Crow Tribal Court.

At the conclusion of the hearing, Tribal Judge Rowena Gets Down advised counsel for the plaintiff that the Court would issue its ruling in five working days. Plaintiff Little Horn State Bank also submitted to the Court proposed Findings of Fact, Con-

clusions of Law and Decree of Foreclosure. Although this hearing transpired more than two years ago, no decision has been issued by the Crow Tribal Court.

Since the default hearing concluded, plaintiff's counsel has made numerous inquiries about the status of said case. Throughout all her communication with the Crow Tribal Court, plaintiff has only been advised that Tribal Judge Rowena Gets Down is no longer sitting on the bench and that a decision as to the underlying default is still pending.

On June 20, 1988, plaintiff acquired possession of the forklift and removed it from the exterior boundaries of the Crow Indian Reservation.

On June 30, 1988, the Crow Tribal Court issued an Ex Parte Order in the original lawsuit filed by Little Horn State Bank nearly two years ago. This order mandated that the Little Horn State Bank to return the forklift in their possession to the Crow Tribal Court impoundment yard for disposition by the Court. Prior to the issuance of this order, plaintiff's counsel of record was not notified of any motion or hearing on this matter.

On July 5, 1988, defendant Daniel C. Old Elk, Sr., delivered a certified copy of the June 30, 1988 Tribal Court Order to State District Court Judge G. Todd Baugh. Again, without notification to plaintiff, defendant Daniel C. Old Elk requested the Thirteenth Judicial District Court of Montana to honor said Crow Tribal Court order.

Having been advised of this ex parte communication with Judge Baugh, plaintiff's counsel travelled to Crow Agency, Montana, where she spoke with Chief Judge Dennis Big Hair of the Crow Tribal Court. Counsel for Little Horn State Bank attempted to file with the Tribal Court a motion to set a hearing on the order dated June 30, 1988 and to hold the enforcement of said order in abeyance until a hearing could be held. Judge Big Hair advised plaintiff's counsel that no hearing would be scheduled and that no motion would be accepted by the Crow Tribal Court from Little Horn State Bank. Judge Big Hair further advised counsel that the Crow Trib-

al Appellate Court was a nonfunctioning body, but that the Appellate Court might begin hearing cases at Judge Big Hair's request.

On July 6, 1988, plaintiff Little Horn State Bank filed this action alleging a violation of its due process rights under the Indian Civil Rights Act of Title 25 U.S.C. § 1302(8). Plaintiff also filed a Motion for Temporary Restraining Order seeking to enjoin defendants from enforcing the Crow Tribal Court Order dated June 30, 1988. Defendants were duly served with notice of plaintiff's motion for a temporary restraining order. Defendant Dan Old Elk, Sr., did appear in Chambers and in Court with respect to the Temporary Restraining Order issued on July 7, 1988. However, he did not appear at the hearing of July 18, 1988 on plaintiff's Motion for a Preliminary Injunction although he was given notice of said hearing. Defendant Crow Tribe did not appear to contest either Motion.

## DISCUSSION

■ Plaintiff invokes the jurisdiction of this Court pursuant to Title 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 25 U.S.C. § 1302(8).

The most compelling basis for jurisdiction in this matter is found at 25 U.S.C. § 1302(8) since plaintiff alleges a violation of the Indian Civil Rights Act (ICRA). The Court is quite mindful that the Supreme Court has long held that federal courts have no jurisdiction to entertain actions to redress violations of the ICRA other than by habeas corpus petition pursuant to Title 25 U.S.C. § 1303. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

Nevertheless, the United States Court of Appeals for the Tenth Circuit has fashioned a narrow exception to *Martinez* which appears to be applicable in this case. *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980), *cert. denied*, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847, *reh. denied*, 450 U.S. 960, 101 S.Ct. 1421, 67 L.Ed.2d 385 (1981). In *Dry Creek*, the Court of Appeals distin-

guished *Martinez*, noting that the Supreme Court had focused on three factors in determining that federal courts do not have jurisdiction of § 1302 claims. The Court identified those factors as: 1) the availability of Tribal remedies; 2) a dispute which is peculiarly intra-tribal in nature; and 3) an action in which all the parties are Indians. 623 F.2d at 685. Those factors were found not to be present in the *Dry Creek* Case.

After considering those same factors, the Court concludes that they are similarly absent in this case and that the *Martinez* holding should not preclude this Court from exercising jurisdiction. First, all parties to this action are not Indians. Plaintiff is a financial institution located outside the exterior boundaries of the reservation. One of the significant factors distinguishing *Dry Creek Lodge* from *Martinez*, was the presence of non-Indian parties in the former case. 623 F.2d at 684.

Secondly, the underlying dispute in this case is not of intra-tribal nature contemplated by the Supreme Court in *Martinez*. The underlying cause of action arises out of an executed promissory note and purchase money security interest in a forklift. This transaction occurred outside the exterior boundaries of the reservation and is not of tribal importance.

Third, the record clearly reflects that there are no further adequate tribal remedies available to plaintiff. Plaintiff has recognized the establishment of the Tribal Court and carefully followed its procedures. Notwithstanding its diligence in providing notice to the defendants and complying with the Tribal Court system, plaintiff has been unable to obtain a simple default judgment. Plaintiff has no other tribal remedies available. The Tribal Court of Appeals has not functioned in some time and will only operate at the whim of the current Judge Dennis Big Hair. Plaintiff's counsel has inquired on numerous occasions as to the status of their underlying action to no avail. Counsel's last contact with the Tribal Court resulted in the Court refusing to file any pleadings which plaintiff's counsel wished to file with the Court. Certainly plaintiff has exhausted all known tribal remedies and should not be required to expend any futile efforts with tribal authorities. With this in mind, the Court concludes that jurisdiction does exist to determine this Motion for Preliminary Injunction.

The factors to be considered in deciding whether an injunction is appropriate in a given case are as follows:

(1) a strong likelihood of success on the merit;

(2) the possibility of irreparable injury if relief is not granted;

(3) the balance of hardships; and

(4) advancement of the public interest.

*Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir.1980).

In the Ninth Circuit, plaintiff, as the moving party, has the burden of demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury *or* (2) that serious questions are raised and the balance of hardship tips sharply in its favor. *Id.*, at 1201. These tests are not separate, but represent the "outer reaches of a single continuum". *Id.* This Court must balance the equities in the case to determine at which point along the continuum a stay is justified. With those points in mind, the Court will proceed to consider the present case in light of those factors.

I. *Probability of success on the merits and the possibility of irreparable injury.*

In this case, plaintiff alleges that enforcement of the Tribal Court's order will result in a deprivation of its property without due process. Specifically, plaintiff claims that the order was entered without notice or hearing, in violation of its rights under the ICRA. The ICRA, at 25 U.S.C. § 1302(8), requires at least a minimal amount of process before the property of any person may be taken. The Court need not inquire into the precise amount of due process required in this matter, since it is clear that this plaintiff was afforded absolutely none. By requiring the plaintiff to relinquish control of the forklift in ques-

tion, the Tribal Court will deprive the bank of its property interest in the equipment, without the courtesy of any notice, hearing or other pretense of due process. Plaintiff has a strong probability of success in its claims regarding a denial of due process, in violation of the ICRA.

Further, with respect to the second factor, plaintiff's only remedy lies with its possession of the forklift, and its right to resell the equipment to recover the outstanding indebtedness owed by defendants. Enforcement of the Tribal Court order would deprive plaintiff of this remedy. It is abundantly clear to this Court that the Tribal Court would be of no assistance in plaintiff's quest to recover any amount due. The Tribal Court's refusal to enforce the validly obtained state court judgment against defendant Dan Old Elk deprives plaintiff of any adequate remedy at law. Therefore, this Court must enjoin the Tribal Court from compelling plaintiff to return the forklift to the impoundment yard of the Tribal Court, since failure to do so would subject plaintiff to the possibility of irreparable injury.

At this juncture, the Court finds that the first test for a preliminary injunction has been met, and thus the remaining factors need not be evaluated. However, the Court feels compelled to comment more about the situation at hand.

Over the past decades, Indian tribes have cried out for and received judicial recognition of their status as sovereign, or quasi-sovereign nations. The Supreme Court has repeatedly fostered the federal government's policy of encouraging tribal self-government. *Iowa Mutual Ins. Co. v. La Plante*, 480 U.S. 9, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987); *Three Affiliated Tribes v. Wold Engineering*, 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). As a vital role in tribal self-government, the federal government has consistently urged the development of tribal courts. *U.S. v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).

This Court is well aware of the continued promotion of tribal self-government and self-determination. In *National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), the Supreme Court directed the federal district court to give tribal legal institutions the "proper respect" by staying its hand in order to allow the Tribal Court a "full opportunity to consider the issues before them." 471 U.S. at 857, 105 S.Ct. at 2454. This Court, in keeping with its obligation to uphold the law, will honor that directive.

However, it has become extremely difficult to do so in the face of such decidedly egregious facts as are presented herein. Plaintiff has recognized the sovereignty of the Tribe and has valiantly tried to operate within the Tribal Court system, seeking its approval of a valid judgment entered in the courts of the State of Montana, and assistance in enforcing the same. The Crow Tribal Court, acting as a sort of "kangaroo court", has made no pretense of due process or judicial integrity. Plaintiff was met not only with bias and uncooperativeness, but with a blatantly arbitrary denial of any semblance of due process. The tribal judge's conduct makes a mockery of any orderly system of justice, and renders any attempt to deal with the Tribe in a professional and competent manner a farce. The Court seriously questions whether the conduct of the Tribal Court is befitting the title of a sovereign, and the respect and deference customarily accorded along with that status.

It would appear that the Crow Tribal government changes judges at a whim, to the detriment of non-Indian litigants, and of the Tribe. As a result, the Tribal Court lacks any continuity and uniform precedent which is the foundation of our judicial system. While the tribal members enjoy the protection of their rights under both the United States Constitution and the ICRA, depending on the forum, it appears that non-Indians are not granted the same privilege of dual citizenship in Tribal Court. If

the Crow Tribe wishes to earn the respect and cooperation of its non-Indian neighbors, it must do more to engender that respect and cooperation, not abuse those neighbors who attempt to work within its system.

Ordinarily, the Court would proceed to enter a preliminary injunction at this time, setting a schedule for later determination of the propriety of a permanent injunction. *See, Shanks v. City of Dallas, Tx.*, 752 F.2d 1092, 1097 (5th Cir.1985). However, the factual context of the case is sufficiently established, and need not be further developed to permit a ruling on the issues raised by a request for permanent injunction. Moreover, the plaintiff has shown that "there exists some cognizable danger of recurrent violation." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953). The Court deems it appropriate at this time to enter a permanent injunction, barring enforcement of the Tribal Court Order obtained ex parte, without notice or hearing. Therefore,

IT IS ORDERED that defendants Crow Tribal Court and Dan Old Elk, Sr., are hereby permanently restrained, enjoined, and prohibited from pursuing enforcement of the Crow Tribal Order dated June 30, 1988, commanding plaintiff, Little Horn States Bank, to relinquish the forklift which is the subject of the underlying action.

The Clerk is directed forthwith to notify counsel for the respective parties of the making of this order.